COMMONWEALTH of Pennsylvania, Appellee

v.

**Diane C. CURRAN, Appellant.**

Superior Court of Pennsylvania.

Argued June 28, 2007.
Filed July 31, 2007.

Dwight L. Danser, Easton, for appellant.

William M. Blake, Assistant District Attorney, Easton, for Commonwealth, appellee.

BEFORE: TODD, GANTMAN, and KELLY, JJ.

OPINION BY TODD, J.:

¶ 1 Diane Curran appeals the December 15, 2006 judgment of sentence of 6 to 12 months in prison entered by the Honorable William F. Moran of the Northampton County Court of Common Pleas after she pled guilty to one count of furnishing alcohol to minors,[1] a misdemeanor of the third degree. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this matter as revealed by the record before us are as follows. On November 14, 2006, Appellant entered a guilty plea to the above charge. At the plea hearing, she admitted that, on March 2, 2006, she had furnished seven cases of beer to Jason Dietterick, whom she knew was under 21 years of age. Appellant further admitted during the plea hearing that she knew Dietterick's parents were not home and that he was planning to host a party in their absence on March 4, 2006. Appellant also admitted that she had purchased beer for Diettrick on two or three other occasions. As a result of consuming the alcohol furnished by Appellant at Diettrick's home at the March 4, 2006 party,

---

1.  18 Pa.C.S.A. § 6310.1.

Kyle Kehler drove into a tree and his two passengers, Michael Cummings and Amanda Schultz, were killed. (N.T. Sentencing, 11/14/06, at 9–11.)

¶ 3 In return for Appellant's guilty plea to furnishing alcohol to a minor, the Commonwealth withdrew a charge of recklessly endangering another person that was originally filed against Appellant. (*Id.* at 2.) On December 15, 2006, following completion of a pre-sentence investigation, Judge Moran sentenced Appellant to the maximum sentence allowable under Pennsylvania law for a third-degree misdemeanor—6 to 12 months in prison. Following the denial of her timely motion for reconsideration, Appellant timely appealed, challenging her sentence.

¶ 4 Where an appellant challenges the discretionary aspects of a sentence, as in the instant case, there is no automatic right to appeal and an appellant's appeal should be considered a petition for allowance of appeal. *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa.Super.2001). Before a challenge to a judgment of sentence will be heard on the merits, an appellant first must set forth in his or her brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his or her sentence. *Id.*; Pa.R.A.P. 2119(f). Appellant has complied with this requirement.

¶ 5 An appellant also must show that there is a substantial question as to whether the imposed sentence was inappropriate under the Sentencing Code. *See Ritchey*, 779 A.2d at 1185; 42 Pa.C.S.A. § 9781(b). Whether an issue raises a substantial question is a determination that must be made on a case-by-case basis; however, in order to establish a substantial question, the appellant generally must establish that the sentencing court's actions either were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Ritchey*, 779 A.2d at 1185.

¶ 6 In her 2119(f) statement, Appellant argues that the judge erred by imposing a sentence outside the sentencing guidelines. She argues that, by sentencing her to the maximum sentence allowable under Pennsylvania law, the judge failed to consider such factors as her background, characteristics, and rehabilitative needs and based the sentence solely on "the perceived seriousness of the result of the offense." (Appellant's Brief at 11.) Pursuant to 42 Pa.C.S.A. § 9781(c)(3), a claim that the sentencing court sentenced outside the sentencing guidelines presents such a substantial question. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa.Super.2004). Thus, we will review Appellant's claim.

¶ 7 Appellant acknowledges that the trial judge placed his reasons for deviating from the guidelines on the record, but argues that the judge failed to consider that she is a 63–year–old woman with no prior record, who fully cooperated throughout the proceedings, acknowledged her involvement in the offense, accepted responsibility for her role in the incident, and expressed remorse to the families of the victims and the court. (Appellant's Brief at 16.) She argues that, in sentencing her to the maximum sentence permitted, the court only considered that two people died as an indirect result of Kehler having attended Dietterick's party. (*Id.* at 17.) Appellant further argues that because the record reveals that Kehler consumed additional alcohol at other locations on the night of the accident, Appellant was unfairly penalized for the actions of others who furnished Kehler with additional alco-

hol after he consumed beer at Dietterick's home. (*Id.* at 18.)

¶ 8 In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.A. § 9721; *see also Commonwealth v. Eby,* 784 A.2d 204, 205–06 (Pa.Super.2001). If an appellate court determines that a sentence which is outside the guidelines is unreasonable, it shall vacate the sentence and remand the case for resentencing. 42 Pa.C.S.A. § 9781(c)(3).

¶ 9 At the sentencing hearing, while Judge Moran acknowledged that Appellant had no prior criminal record and noted that he had great respect for the sentencing guidelines, he reasoned that this case was different because of the quantity of alcohol purchased, the fact that Appellant had supplied alcohol to Dietterick in the past, and because two people died as an indirect result of Appellant's actions.

¶ 10 In support of his imposition of the maximum sentence permitted under the law, Judge Moran explained:

> You have no criminal record. Nothing in this report suggests that you are an evil person. This was not the willful taking of a life, but your actions set in motion the taking of two lives. [The Commonwealth] makes a good point. When you purchased eight[2] cases of beer for a person you knew was underage, it can certainly be implied [that] you understood that was not for his personal consumption but was, rather, intended for use at some form of social activity in which alcohol would be consumed; and you would have every reason to believe, given the nature of this purchase, that the participants or a sub-stantial number of participants in such an event would themselves be underage.

> The community in which the driver lives—and I know where we're talking about where the accident occurred. This wasn't a situation where people were going to walk back and forth from a party. In the suburbs teenagers, like anyone else, move by motor vehicle. So it could be assumed safely that when you purchased this, if you had thought it out, that, one, he and the others would drink alcohol at a social function, two, that there would be no adult control likely at that affair, three, that the people who left that party, some of them at least, would likely leave drunk or impaired and that they would drive drunk and impaired.

> Now, what are the probabilities that one of those leaving the party driving a car impaired would kill someone? Probably relatively low, but certainly not beyond your ability to understand that that was one of the risks that a prudent person would understand; and a prudent person, a law-abiding person, would refuse the request to purchase the alcohol simply because of that kind of useful calculation. This isn't merely handing somebody a beer. The circumstances are different, the quantity of the beer, the obvious intent, the likelihood of the party, the likelihood of drunk driving, the risk that drunk driving poses to the community.

> Unfortunately for the youngsters who went to that party, tragedy did result. They used poor judgment. They're young people. Young people don't have necessarily a fully informed ability to understand and to make clear judgments. . . .

---

**2.** The record reflects that although Appellant purchased eight cases of beer, she actually furnished only seven of the cases to Dietterick.

I have to look at the nature of the offense itself, at your background. And I see nothing in your background, with one glaring exception, that is unfavorable. The glaring exception is this: According to the presentence report, to which there was no objection, this is not the first time you've purchased alcohol for teenagers. "The defendant," I quote, "stated that she had known Jason Dietterick for some time because of doing chores for her around her home. She stated that they became friends and that she had purchased alcohol for him approximately two or three times prior to the instant offense." Again, "The defendant stated that she regrets her decision." I'm certain you do. I'm certain your expression of regret and condolences to the parents, friends and relatives of the deceased are true and heartfelt. That may help you over the remainder of your life to deal with that situation. It does not bring back the life of the youngsters who lost their lives.

The Court is fully cognizant of the effect that this has on the victims and the community, and a Court must take into consideration the deterrent effect of sentencing when it involves a crime that is very often occurring in our community and often is undetected. In fact, it is generally only detected when tragedies occur. But it's not that this doesn't happen every weekend in our community where a well-meaning adult recklessly decides, "I can buy alcohol for minors." Most of the time nothing comes of it other than a degree of disrespect for the law. In this case the ultimate price was paid for this decision. And the message to the community must be that the courts will take into account the seriousness of these offenses in the hope that the sentencing power of the court will help deter others from similar action.

I find that in this case, considering all of the factors I am required to take into account, the result of this crime calls out for a stringent sentence. . . .

I . . . have great respect for the Sentencing Commission's guidelines. They serve a very useful role. They point us in the direction that a Court should take when dealing with what is the average crime that is under consideration and what is the effect of selling alcohol to a minor in a normal situation. But this is different. It started off differently because of the quantity purchased, by the fact that you had been a prior supplier of alcohol to this individual and that lives were lost. Not to impose the maximum sentence, which I recognize is outside of the guidelines, would be to trivialize both the offense and the impact on the community and, in particular, the impact on the families of the victims.

(N.T. Sentencing Hearing, 12/15/06, at 19–24.)

¶ 11 Following our review of the sentencing hearing transcript, we conclude that Judge Moran satisfied the requirements of the Sentencing Code when he imposed Appellant's sentence and find that the sentence was reasonable under these tragic circumstances. Accordingly, for the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 12 Judgment of sentence **AFFIRMED.**