J-S52027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.P., | |
| Appellee | No. 3182 EDA 2013 |

Appeal from the Judgment of Sentence entered October 17, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0006367-2009,
CP-51-CR-0006369-2009 and CP-51-CR-0006371-2009

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED SEPTEMBER 10, 2014**

The Commonwealth appeals from the judgment of sentence entered after J.P. ("Appellee") pled guilty to three counts of aggravated assault, three counts of unlawful restraint, and three counts of endangering the welfare of a child with regard to Appellee's minor grandchildren, B.P., Z.P. and Q.P.[1]  We affirm.

The pertinent facts were previously summarized by this Court as follows:

> On October 29, 2007, Lauren Adels, a social worker at the Department of Human Services, was assigned to investigate the children of R.P. ("Mother"), after a nurse from Temple Hospital reported that the children had not been seen for medical

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2902(a)(1), and 4304(a)(1).

*Former Justice specially assigned to the Superior Court.

treatment for a long time. N.T., 3/19/12, at 55, 85. On October 29, 2007, Ms. Adels visited the home of Mother and encountered Appellee, who advised her that Mother was not home. *Id*. at 85-87. Ms. Adels returned the following day and upon entering the home, found B.P. and Z.P., six-year-old twin boys, confined in umbrella strollers and Q.P., a three-year-old girl, on a mattress on the living room floor. *Id*. at 86. The children were severely emaciated and unable to walk. *Id*. at 55-65, 85-89. Ms. Adels observed that the house was full of bags of trash, the stove did not work, the house contained no significant food, and there was no hot water in the home. The second floor contained bags piled to the ceiling in all of the rooms, and the walls were disintegrating due to water damage and mold. Black trash bags had been taped over the windows on the first floor to prevent a view into the interior. *Id*. at 85-89. The only food in the house consisted of a container of milk and a bag of cereal. *Id*. Mother and her children shared the one mattress on the living room floor, and Mother did not permit the children to leave the house. *Id*. at 67, 88. The children were removed from the home the following day. *Id*. at 89. When the children were removed from the house, they experienced a reaction from being exposed to light. *Id*. at 88.

T.D., who became the foster mother and then adoptive mother of the children, testified that when she assumed custody of the children, they could not walk, could not talk, were not toilet trained, and were severely underweight and malnourished. *Id*. at 27-30. B.P. and Z.P., the six-year-old boys, each weighed 31 pounds. Pre-Sentence Investigation Report, 5/7/12. B.P. and Z.P. slept in a "folded up" position with their bodies "bent directly in half", in a manner conforming to the shape of an umbrella stroller, to which they had been confined for extended periods. *Id.* at 31-48; Criminal Complaint, 10/20/2008. Their manner of movement consisted of "dragging" themselves across the floor. *Id*. at 32, 40. When they later learned to stand, as a result of intensive medical intervention, they maintained their bent posture. *Id*. at 31-33, 36-40. Both B.P. and Z.P. remained in diapers for up to a year and half after their removal from Mother's home. *Id*. at 42. Q.P.'s injuries were less severe. *Id*. at 45-46. Her posture, though bent, was not as severely malformed as her brothers'. *Id*. Once in T.D.'s care, the children gained weight, and with rigorous therapy, learned to

talk, walk upright; they also began to attend school. *Id*. at 31-53.

Dr. Lauren Brennan, who reviewed the children's medical records, reported that the injuries, failure to thrive, and developmental delays of the children resulted from neglect, lack of care, failure to seek medical treatment, and social deprivation. *Id.* at 89-92. Dr. Brennan reported that the atrophy in the leg muscles of the children had occurred over a substantial period of time due to malnutrition and lack of use. *Id*. at 91. Neither B.P. nor Z.P. had seen a doctor in over two and a half years. In the four years prior to October, 2007, B.P. and Z.P. had gained less than five pounds. *Id*. at 92. Appellee, who is the children's maternal grandmother, lived at the residence, and cared for the children daily between 3 p.m. and 11 p.m. while Mother was at work. *Id*. at 93.

*Commonwealth v. J.P.*, 82 A.3d 1078 (Pa. Super. 2013) (unpublished at 1 - 4).

Appellee was subsequently arrested and charged with the aforementioned crimes. A non-jury trial commenced on March 19, 2012. However, in the course of trial, Appellee opted to enter a guilty plea by the terms of which the Commonwealth agreed not to seek any mandatory sentences. *See* Guilty Plea, 3/19/12.

Following a sentencing hearing on May 22, 2012, the trial court sentenced Appellee to 11½ to 23 months of house arrest on each count, with the sentences to run concurrently, followed by 10 years of probation under the supervision of the mental health unit of the Department of Probation and Parole.

The Commonwealth filed a post-sentence motion for reconsideration, which the trial court denied on June 1, 2012. The Commonwealth appealed.

On July 25, 2013, this Court issued a memorandum opinion and order vacating the judgment of sentence and remanding for resentencing on the basis that Appellee's sentence of house arrest was illegal because house arrest or home confinement is a form of county intermediate punishment, and only eligible offenders may benefit from county intermediate punishment. *Commonwealth v. J.P.*, *supra*. Pursuant to 42 Pa.C.S.A. § 9802, Appellee, with a conviction for aggravated assault, was not eligible for house arrest; we thus determined that her sentence was illegal. Additionally, we noted that the trial court's sentence of house arrest, far below the mitigated range of the sentencing guidelines, constituted an abuse of discretion because the trial court failed to place adequate reasons on the record for the lenient sentence.

Pursuant to this Court's order, the trial court, on remand, convened a sentencing hearing on October 17, 2013. At the conclusion of the hearing, the trial court imposed the following concurrent sentences:

Docket No 6367-2009: 11½ to 23 months of imprisonment followed by six years of probation for aggravated assault, a concurrent 11½ to 23 months of imprisonment for unlawful restraint, and a concurrent 11½ to 23 months of imprisonment for endangering the welfare of a child.

Docket No. 6371-2009: 11½ to 23 months of imprisonment for aggravated assault, followed by six years of probation, a concurrent 11½ to 23 months of imprisonment for unlawful restraint, and a concurrent 11½ to 23 months of imprisonment for endangering the welfare of a child.

Docket No. 6369-2009: 11½ to 23 months of imprisonment followed by four years of probation for aggravated assault, a concurrent 11½ to 23 months of imprisonment for unlawful restraint, and a concurrent 11½ to 23 months of imprisonment for endangering the welfare of a child.[2]

On November 8, 2013, the Commonwealth filed a motion requesting the recusal of the trial court, and on November 18, 2013, the Commonwealth filed a notice of appeal as well as a statement of errors complained of on appeal. On January 16, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth raises the following issue for our review:

> Where this Court held in the prior appeal that the below-mitigated-guidelines-range sentences imposed for [Appellee's] five years of unfathomable cruelty to three young children were both illegal and an abuse of discretion (in that they did not reflect the gravity of the offenses and their effect on the children, and because the court relied on impermissible and inaccurate factors), did the [trial] court again abuse its discretion when, in derogation of [the Superior Court's] holding, it imposed sentences that are still below the mitigated range of the guidelines, still do not reflect the gravity of the offenses and their impact on the children, and still rest in impermissible and inaccurate factors?

Commonwealth Brief at 3 (footnote omitted).

_____

[2] The trial court imposed the 4 year probationary term at Docket No. 6369-2009 consecutive to the 6 year probationary term at Docket No. 6367-2009 but concurrent with the 6 year probationary term at Docket No. 6371-2009, for a total 10 year probationary term.

The Commonwealth raises a challenge to the discretionary aspects of the trial court's sentence. Where an appellant raises such a challenge, there is no automatic right to appeal and the appeal should be considered a petition for allowance of appeal. *Commonwealth v. Curran*, 932 A.2d 103, 105 (Pa. Super. 2007). Before we can address a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of [a] sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, the Commonwealth filed a timely notice of appeal. While the Commonwealth did not file a written post-sentence motion, at the resentencing hearing, the Commonwealth preserved its claim by strenuously objecting to the trial court's sentence, asserting that it constituted a "manifest abuse" of the trial court's discretion. N.T., 10/17/13, at 24. Additionally, the Commonwealth has included in its brief a Pa.R.A.P. 2119(f) statement, and has raised a substantial question for our review. *See* Commonwealth Brief at 15-19; *Commonwealth v. Sims*, 728 A.2d 357, 359 (Pa. Super. 1999) (The Commonwealth's claim that the factors relied upon by the trial court for the imposition of a sentence below the mitigated

range of the guidelines were unreasonable, and that the circumstances do not support such downward deviation, presents a substantial question for review.). We therefore proceed to address the merits of this appeal.

Our standard of review in sentencing matters is well settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

The sentencing court is permitted to deviate from the sentencing guidelines; however, the court must place on the record its reasons for the deviation. 42 Pa.C.S.A. § 9721(b); In sentencing outside of the guidelines, the court must demonstrate that it understands the sentencing guidelines ranges. 'Where the trial judge deviates from the sentencing guidelines ... he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range.'

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009).

"[T]he parameters of this Court's review of the discretionary aspects of a sentence is confined by the dictates of 42 Pa.C.S. § 9781(c) and (d)." *Commonwealth v. Daniel*, 30 A.3d 494 (Pa. Super. 2011), *quoting Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007). "Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is

"clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." ***Commonwealth v. Coulverson***, 34 A.3d 135, 146 (Pa. Super. 2011).

Section 9781(d) provides that when reviewing a sentence, we must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> (3) The findings upon which the sentence was based.
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

"[T]he term 'unreasonable' generally means a decision that is either irrational or not guided by sound judgment. [A] sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b)." ***Daniel***, 30 A.3d at 497, *quoting **Walls, supra***.

42 Pa.C.S.A. § 9721(b) offers the following guidance:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing ….

42 Pa.C.S.A. § 9721(b).

"[The] weighing of factors under 42 Pa.C.S. § 9721(b) [is] exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c)." *Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012) *quoting* *Commonwealth v. Bowen*, 975 A.2d 1120, 1123–1124 (Pa. Super. 2009) (citations omitted).

The sentencing guidelines in this case recommended the following:

| | |
|---|---|
| Aggravated Assault: | 2 to 3½ years (mitigated range)<br>3 to 4½ years (standard range)<br>4 to 5½ years (aggravated range) |
| Unlawful Restraint: | 9-16 months(+/- 9) |
| Endangering welfare of a child: | 3-12 months (+/-6) |

The trial court's sentences of 11½ to 23 months for each count of aggravated assault therefore fell below the mitigated range of the sentencing guidelines, while the sentences of 11½ to 23 months for each count of unlawful restraint and endangering the welfare of a child fell within the standard range of the guidelines.

At the sentencing hearing, the trial court heard from the Commonwealth and Appellee's counsel, and then proceeded to question

Appellee, after which the trial court provided the following rationale for its sentence:

> The [trial court] is very much familiar with this case from a trial aspect ... [The trial court] heard the facts of this case, and ... heard from counsel. I have heard no objections to the medical conclusions and the psychological conclusions that were proffered by the defense in favor of [Appellee] ... she does have an IQ of 56. ...
>
> [The trial court] does take note of the severity of the charges here and the facts associated with it. I think that this court has stated of record previously, that ... [the children's mother] was primarily responsible for the caretaking of those children and subjecting those children to the [in]juries that they have sustained. That is not to say that the [trial] court [has] absolved [Appellee] from anything involved in that.
>
> I'm not going to sit up here and pretend that there might not be a reason for [Appellee] not allowing the authorities into the house [when they arrived to conduct an investigation into the children's wellbeing]. I don't know what their reasons are. I didn't have that. But I do know there is a relationship between the mother ... and the grandmother and the daughter whose children they were.
>
> I'm taking into consideration the fact that [Appellee] has an IQ of 56. I'm taking into consideration [her] medical condition. ...
>
> Our own probation department or whoever did the background checks has indicated that she is a low risk factor. So there is no reason, to now all of a sudden after 16 years, not to believe what is posted in a report by her own sub-agencies who are there to assist the [trial] court in making considered opinions and decisions. I am going to take into account the fact that she has been free her whole life.
>
> ***
>
> [Appellee is] 54 years old and free of any contact. At least to my knowledge she has had no contacts other than this case with the Criminal Justice System and had no contact with the

Criminal Justice System as a juvenile ... that is another [m]itigating factor.

     ... I am not going to discount the fact that we have seen her do what she was required to do under that house arrest sentence. She has incurred no infractions, which I think is proof and goes a long way to proving that she is a low risk factor to being a recidivist, a repeat offender.

     I'm taking into account, however, that she is 56, but she is not literate....

     I'm taking into account that she has complied with all other aspects of the court's sentencing to house arrest, including the mental health component. There have been no violations of that. There have been no violations of anything that the [trial court] placed on her at the time of sentencing ... 16 months ago.

     The reason for [the trial court's] sentences is to make sure that in the event there is a violation of the court sentence, she will face a severe penalty by way of that violation because there is going to be a long term of probation. ...

***

[Appellee] accepted responsibility by pleading guilty. It was not a negotiated guilty plea. So that is another mitigating factor.

N.T., 10/17/13, at 32-36, 41.

In its Pa.R.A.P. 1925(a) opinion, the trial court further explained:

     [T]he sentencing court took into consideration the severity of the crime against the children who lived in deplorable conditions, sustaining physical and mental injury, as well as the progress of their treatment and recovery under the care of their adoptive mother. Also, it must be noted that it was Appellee's daughter, her co-defendant, who took advantage of Appellee's limited mental and physical limitations by designating her to "watch over" the children – a task she was clearly unfit and incapable of doing. Moreover, Appellee has an IQ of 56 following an evaluation at the time of her arrest (mild to moderate retardation): she is illiterate and has a 6th grade education despite being 54 years old. Appellee also suffers from blindness

- 11 -

in her left-eye, partial right-eye impairment, diabetes, glaucoma, depression, hypertension, and arthritis in her hands, feet, and legs, and a possible cancerous growth in her left ear. It is important to note that Appellee's mental and physical condition viewed through the eyes of the sentencing court was just one of many factors considered.

Second, the greatest advantage the sentencing court has over the appellate court is the ability to observe the defendant. Although Appellee did not testify on her behalf, the [trial] court was able to question and observe her during the hearing on March 19, 2012, the first sentencing hearing on May 22, 2012, and the re-sentencing on October 17, 2013 – another factor the [trial] court considered in fashioning Appellee's sentence, in addition to reviewing her pre-sentence investigation report.

Third, aside from merely focusing on Appellee's mental and physical impairments and conditions, the sentencing court did also consider not only the nature of the crimes, but the mental and physical progress of the children. Further, in considering the impact of the crimes on the community, Appellee has clearly demonstrated that she can barely think for herself and is incapable of making basic decisions and was confined to her home as a recluse. In addition to a permanent stay-away order that includes all children, it was determined that Appellee does not pose any danger to the community and is very unlikely to be a repeat offender.

The court also considered Appellee's lack of a prior juvenile or adult criminal record. In addition, Appellee served 16 months of her original sentence with no infractions. The [trial court] also determined that due to the fact that Appellee pled guilty, she did in fact accept responsibility for her actions.

Lastly, the [trial] court in considering numerous factors, imposed a sentence below the mitigated range of the sentencing guidelines. Although the sentencing court is required to consider and consult the sentencing guidelines, it retains the discretion to sentence below the mitigated range as long as it clearly explains its reasons for doing so. ...

Here, after reviewing the pre-sentence reports, the appellate court opinion, Appellee's current mental health, Appellee's mental and physical impairments, as well as argument

> from both sides, the court imposed a total sentence of eleven and one-half (11½) to twenty-three (23) months <u>incarceration</u>, followed by ten (10) years reporting probation.

Trial Court Opinion, 1/16/14, at 4-6 ("Appellant" corrected to "Appellee" and footnote deleted).

"Where the trial court deviates substantially from the sentencing guideline range it is especially important that the court consider all factors relevant to the determination of a proper sentence." *Commonwealth v. Messmer*, 863 A.2d 567, 573 (Pa. Super. 2004) (citations omitted). Here, we conclude that the trial court, after considering the pre-sentence investigation report and the guidelines, placed adequate reasons on the record for its decision to impose sentences that fell below the mitigated range. The trial court appropriately took into account the requisite sentencing factors, including the severity and impact of the crime on the victims, Appellee's age and physical and mental health, her expressions of remorse, her criminal history, and her likelihood of reoffending. The trial court observed Appellee during the sentencing hearing and assessed her demeanor, mental capacity, and sincerity. "Matters of sentencing are left to the sound discretion of the trial judge. Absent a finding that the court manifestly abused its discretion, this Court will not substitute its judgment for that of the trial court," and an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. *Commonwealth v. Rickabaugh*, 706 A.2d 826, 847 (Pa. Super. 1997), *appeal denied*, 558 Pa. 607, 736 A.2d 603 (1999). After

reviewing the record and considering the trial court's detailed reasons for its decision to impose sentences below the mitigated range of the guidelines, we do not find the sentence to be unreasonable. ***See Coulverson***, 34 A.3d at 146. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2014