J. A17031/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NATALIE TAYLOR, | : | No. 1272 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 18, 2019,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002323-2018

BEFORE:  BOWES, J., McCAFFERY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 28, 2020**

Natalie Taylor appeals from the April 18, 2019 judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following her guilty plea to aggravated assault, endangering the welfare of children, simple assault, recklessly endangering another person, and possession of instruments of crime.[1] Appellant received an aggregate sentence of 17-34 years' incarceration.  We affirm.

---

[1] 18 Pa.C.S.A. §§ 2702(a), 4304(a)(1), 2701(a), 2705, and 907(a), respectively.  We note that in exchange for her plea, the Commonwealth **_nolle prossed_** or dismissed several other charges, including criminal attempt to commit murder, conspiracy, involuntary deviate sexual intercourse, false imprisonment and unlawful restraint (serious bodily injury).  18 Pa.C.S.A. §§ 901(a), 903(c), 3123(b), 2903(a), and 2902(a)(1), respectively.  (**_See_** notes of testimony, 10/9/18 at 7; appellant's written guilty plea colloquy, 10/9/18 at unnumbered 1; and notes of testimony, 4/18/19 at 6.)

The heart-wrenching facts of this case, as summarized by the trial court, are as follows:

> [Appellant] abused, neglected and systematically tortured [the] five-year old complainant I.M. in a course of conduct spanning at least three years and culminating in an intervention by medics on January 22, 2018. During the period of abuse, [appellant] had repeatedly stepped on the child, poked her buttocks and vagina with a pole and brush, kicked her in the back causing her to fall down the stairs, put a sock in her mouth, hit her with a cord on the back of her head, made her stand in the corner with her arms up because she "stole" food or urinated on herself, made her lick urine off the floor, put dog poop on her face, and put hot sauce in her mouth and eyes. [Appellant] did not bathe I.M. for several months, did not provide her clean clothes, routinely withheld food from her, and locked her in a dog cage. [Appellant] had not brought I.M. to the doctor since she was two years old, claiming it "slipped her mind". [Appellant] exchanged text messages in which she joked about abusing I.M., insinuating that the abuse and neglect were warranted because the child was "full-blown f***** retarded."
>
> On January 22, 2018, medics were called to [an address] in Philadelphia for a report of an unconscious five year old child. That child, I.M., was unresponsive to painful stimuli when medics arrived and had slow labored breathing. An initial physical examination by the medics showed significant bruising and lacerations all over the child's body. I.M. was rushed to Children's Hospital of Philadelphia (CHOP). When she regained consciousness, she told medics "I was beaten because I was bad." The child told Dr. Natalie Stavas, child abuse pediatrician, "Help me. I've been beaten. Help me. I hurt." When I.M. arrived at the hospital she was naked with nothing but a blanket that was covered with her feces and urine. Due to concerns over spinal injuries, I.M. was immediately placed in a C-collar. I.M.'s initial CAT scan revealed bleeding around her brain and numerous external injuries:

head to toe bruises, lacerations and loop marks from objects that [appellant] had used to hit her. Dr. Stavas also observed thinning, patchy hair due to nutritional neglect, numerous bruises on I.M.'s face, one lip so badly swollen that she could barely open her mouth, one lip torn so severely that it was almost ripped from her gum line, bruising to her chin and under her neck, bleeding from her nose, swelling and abrasions around her eyes, general bruising on her abdomen, inner thighs and genital area, loop marks on her abdomen, genital lacerations in multiple areas some of which were actively bleeding, a laceration near her rectum, redness and swelling in her hymen, bruising and loop marks to her hip and lower back, bruising to her shoulders and arms, swelling and lacerations to her hands, bruising and lacerations to her legs, redness and swelling to her feet.

I.M. lost so much blood, likely from her genital wounds, that she required a blood transfusion. Her injuries were at multiple stages of healing and there was evidence of older injuries as shown through scarring on her body. Dr. Stavas saw signs of nutritional neglect and opined that had I.M. not had immediate attention she would have died. I.M. remained in inpatient care for several weeks. Dr. Stavas explained that some injuries I.M. sustained at the hands of the [appellant] could either not be repaired, or repair would have been so traumatic and painful, or leave I.M. susceptible to infection, that the decision was made to allow them to heal as best they could on their own. I.M.'s medical team ultimately made a diagnosis of severe child abuse, neglect and applied the medical definition of torture – a classification so severe the team had never used it before.

Trial court opinion, 8/9/19 at unnumbered 1-3 (citations to notes of testimony and exhibits omitted).

On October 9, 2018, appellant entered a plea of guilty. An aggregate sentence of 17 to 34 years' incarceration was imposed on April 18, 2019.

Appellant filed timely post-sentence motions which were denied by the trial court, without a hearing, on April 24, 2019. Appellant timely appealed. The trial court ordered appellant to file a Pa.R.A.P. 1925(b) concise statement of errors on appeal and appellant timely complied. The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following issue on appeal.

> DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT IMPOSED A SENTENCE, WHICH WAS OUTSIDE OF THE SENTENCING GUIDELINES, AND FAILED TO MEANINGFULLY CONSIDER THE SENTENCING FACTORS OF 42 Pa.C.S.[A.] § 9721(b)?

Appellant's brief at 6.

Appellant challenges the discretionary aspects of her sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our [c]ourt recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted; brackets in original).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170 (citation omitted; brackets in original).

Here, appellant filed a timely notice of appeal, properly preserved her sentencing challenge in a post-sentence motion seeking reconsideration of sentence, and included in her brief the requisite Rule 2119(f) statement. Consequently, we must now determine whether appellant raises a substantial question.

We determine whether an appellant raises a substantial question on a case-by-case basis. ***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only when

an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 340 (citation omitted).

Appellant claims that the trial court abused its discretion when it imposed a sentence that was outside the sentencing guidelines and failed to meaningfully consider the factors enumerated in 42 Pa.C.S.[A.] § 9721(b). "Pursuant to 42 Pa.C.S.A. § 9781(c)(3), a claim that the sentencing court sentenced outside the guidelines presents a substantial question." *Commonwealth v. Curran*, 932 A.2d 103, 105 (Pa.Super. 2007) (citation omitted). Accordingly, we will review appellant's claims.

The Sentencing Code provides, that in imposing a sentence,

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). When the sentencing court imposes a sentence outside the sentencing guidelines, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." ***Id.***

Here, the trial court had the pre-sentence investigation and mental health reports.[2] (Notes of testimony, 4/18/19 at 5.) Appellant did not request any amendments or changes to those reports. (***Id.***) As noted by this court in ***Commonwealth v. Antidormi***, 84 A.3d 736 (Pa.Super. 2014):

> [w]hen imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

***Id.*** at 761 (citations and quotation marks omitted). Further, the trial court was advised of appellant's prior record score, offense gravity score and sentencing range. (Notes of testimony, 4/18/19 at 5.)

Appellant's counsel acknowledged that there was no excuse for appellant's behavior, but argued several mitigating factors including that appellant was remorseful from the beginning and accepted responsibility; had

---

[2] We note that appellant's counsel attached the pre-sentence report as Exhibit B to his brief, in violation of Pa.R.Crim.P. 703.

diminished capacity because of her upbringing, physical abuse by her mother, mental conditions and addiction to heroin; was damaged emotionally and medically; was not a danger to the community; and had no prior record.[3] The Commonwealth and the child advocate team requested the trial court to impose the maximum sentence. (*Id*. at 27, 28.)

The trial court set forth its reasons for the sentence imposed as follows.

> In fashioning a sentence here today, the [c]ourt has taken into account the mental health evaluation, presentence investigation, prior record score, offense gravity score, and range in this particular case. And while I have considered the guidelines in this case, I believe that they are truly advisory in nature; that the guidelines, and, frankly, even this cold record will never do justice to what [I.M.] went through.
>
> The level of torture, the level of inhumanity that you have shown to a child who is our most vulnerable[.]
>
> . . . . [T]his is the nastiest, ugliest case I have seen.
>
> I want -- when this case goes up, because I'm sure it will, I am going to insist the Superior Court look at these color photo[s]. Black and white doesn't do it justice. The dog cage, the injuries to [I.M.]'s genital area, the bruises, the marks. None of us can give justice to what she went through.
>
> And while I understand that you sit before me with an open guilty plea, it tells me nothing. It tells me nothing because, Ms. Taylor, there is no accountability. None. I watched you during this entire sentencing hearing, and in a hearing that I've watched other people struggle to keep their composure, you had no issue. Stone faced. Nothing. The photos of [I.M.] standing in a corner, the text

---

[3] These mitigating factors appear in the notes of testimony, 4/18/19 at 6-9.

messages, you know, it shows what your true thought process was.

She was not a child to you. She was not human to you. And the case is not just about [I.M.], because you had two of your own children. Whether or not they were struck or tortured or sexually abused, they knew what was happening in that home. They knew what their mother was capable of. They are traumatized beyond belief, and they will be for the rest of their lives, and they are as much victims in this case as [I.M.]

You have managed to destroy lives that never had a shot, and, hopefully, because of the people in this room, these children will have a better outcome. Hopefully they're getting the help that they need, but it will never go away. They'll be older than you and I and remember what happened. They'll be older than you and I and make decisions that were affected because of what happened to them as children, and you are responsible for that.

And let me not be quiet because this system is so broken. We left that child. We as a society left that child with you, and I am ashamed at this moment to be part of this system.

There is nothing that started off good . . . in this situation. This situation was a mess from the start. I mean, this child -- not a dog, not an animal. Heck, if it was a dog, this case would be in front of me. If it was an animal, this case would be in front of me.

And I'm saying all of this, frankly, not for your benefit, Ms. Taylor, because I don't think you can hear me. It's for the Superior Court when I sit here and write my opinion and justify every year that I give you.

And so that they are clear, let me tick off the check boxes. The reasons I am departing so far above the guidelines is because: One, I do believe a lesser sentence would depreciate the seriousness of this crime; that your injuries to this complainant are

lifelong; that you have failed in any way, shape, or form to assist this victim during the prolonged period of torture that you inflicted up until the moment that you believed she was dead; the extreme mental cruelty to the victim; the extreme physical cruelty to the victim; the fact that these injuries did, in fact -- were inflicted during the time that you were drug addicted and under the influence, which is also a reason to depart above the guidelines; the recommendation of both the prosecution, the child advocates, and what I believe probably [I.M.]would advocate before me; to deter others who look at the system in it[s] broken form and believe that they can take advantage of it.

Kinship is not always best. The monsters within our own family are the ones that can do the worst.

The victim was in a position of trust, care, and dependence upon you. She was particularly vulnerable due to her age, the fact that she was in foster care, as well as any possible mental or physical impairments that she did suffer. Although they were not gone into in detail as to what [I.M.]'s deficiencies, if any, were, they were hinted to throughout this as well as previous hearings. And the victim's injuries substantially undermine the severity of this charge in this case, in that they were so much more severe than an aggravated assault alone.

For all of these reasons, I am departing above the guidelines.

Notes of testimony, 4/18/19 at 34-39.[4]

Here, the trial court did not abuse its discretion in imposing sentence as the court properly considered all of the evidence before it and adequately stated its reasons on the record. Thus, the sentence was not manifestly

---

[4] These reasons were reiterated and elaborated upon in the trial court's opinion, 8/9/19 at unnumbered 5-7.

J. A17031/20

excessive, unreasonable, or contrary to dictates of the Sentencing Code. *See*

*Commonwealth v. Walls*, 926 A.2d 957 (Pa.Super. 2007), *affirmed*, 938

A.2d 1122 (Pa. 2007) (finding that victim was only seven years old at time

defendant, her grandfather, sexually abused her, defendant was in position of

trust and responsibility, and defendant analogizing assaults to accidents,

justified statutory maximum sentences in excess of sentencing guidelines).

Judgment of sentence affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 7/28/2020

- 11 -