J-S60007-19

2020 PA Super 21

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON COLE BEATTY | : | |
| | : | |
| Appellant | : | No. 426 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 19, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005344-2017

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.*

OPINION BY SHOGAN, J.:                    **FILED: FEBRUARY 4, 2020**

Appellant, Brandon Cole Beatty, appeals from the judgment of sentence

entered following his conviction of criminal conspiracy to possess a controlled

substance with intent to deliver ("PWID").[1]   We vacate and remand for

resentencing.[2]

The trial court summarized the factual and procedural history of this

case as follows:

> [Appellant's] jury trial began on October 29th, 2018.  The
> Commonwealth presented substantial evidence related to the
> death of De'Andre Gaskins [("Gaskins")], for which [Appellant]

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 903(a)(1), 35 P.S. § 780-113(a)(30).

[2] We note our disapproval of the Commonwealth's failure to file a brief in this matter.

was charged with drug delivery resulting in death.[1],[3] The jury found [Appellant] not guilty of that charge. However he was found guilty of criminal conspiracy to deliver heroin with fentanyl. The evidence presented for that charge is as follows.

[1] The decedent, [Gaskins,] died of Fentanyl Toxicity.

The Commonwealth presented the testimony of Jamel Tuff [("Tuff")]. Tuff had numerous pending charges involving dealing narcotics, specifically fentanyl, including also being charged with drug delivery resulting in death for the death of the victim in this case, [Gaskins]. Tuff testified that he had no agreement with the Commonwealth as to his pending charges in exchange for his testimony, and had not been offered immunity by the Commonwealth for his testimony. Tuff stated that while he had no agreement with the Commonwealth for his testimony, he hoped for consideration for the sentences he faced for his charges and was partially motivated by this to testify. Tuff was a user of illegal drugs, regularly abusing opiates and cocaine. At the time of his testimony, Tuff had been incarcerated at the York County Prison for 22 months, during which his health significantly improved as he was not able to abuse drugs as he had been on the streets. Tuff testified he had no knowledge as to the manufacture or chemical composition of the illegal substances he ingested. He testified, for example, that if he wanted cocaine and purchased powder, the only way he would know the powder was cocaine and not baking soda, would be to ingest the drugs.

Tuff testified that he would sell drugs to support his habit. He would get 10 to 15 grams of heroin, and sell just enough of it to make a profit so that he could get another 10 to 15 grams to keep the cycle going, with the remaining drugs going to personal use. Tuff knew [Gaskins] from high school, and would occasionally do drugs with him. On December 23rd, 2016, Tuff met with Gaskins because Gaskins wanted to purchase heroin from [Tuff].

---

[3] Appellant was charged with four counts: count 1, drug delivery resulting in death, 18 Pa.C.S. § 2506(a); count 2, manufacture, deliver or possession with intent to manufacture or deliver, 35 P.S. § 780-113(a)(30); count 3, criminal conspiracy to manufacture, deliver or possession with intent to manufacture or deliver, 18 Pa.C.S. § 903(a)(1)–35 P.S. § 780-113(a)(30); and count 4, involuntary manslaughter, 18 Pa.C.S. § 2504(a).

Gaskins arrived at the place Tuff was living at the time and was given what was believed to be heroin, which was purchased from [Appellant]. After Gaskins injected the supposed heroin he told Tuff that he wanted more. Tuff and Shane Ditzler already had a meeting arranged with [Appellant] to purchase more heroin. The meeting with [Appellant] was to take place behind a nearby Turkey Hill [store]. Tuff testified that he then received a phone call from [Appellant] to meet behind the Turkey Hill a block away. When they arrived, [Appellant] was alone in his car, sitting in the driver's seat.

Tuff testified that he and Ditzler then sat in the car, Ditz[l]er in the front passenger's seat and Tuff in the backseat. Tuff testified that the intent of getting in the car was to purchase heroin from [Appellant]. Eventually Gaskins arrived at the car because Tuff and Ditzler needed his money to help pay [Appellant] and for Gaskins to get his share of the heroin. Tuff testified that the money went from Gaskins to Ditzler and then Ditzler gave the total to [Appellant]. Tuff further testified that the heroin went from [Appellant] to Ditzler and Tuff, where Tuff separated it into two (2) bags, and Gaskins was given his share. Tuff then got out of [Appellant's] car and walked back to the apartment. Gaskins walked with Tuff as far as the Turkey Hill. Tuff testified that Ditzler stayed in the car with [Appellant] and they went to go get other drugs for Ditzler. Tuff testified that at the time he had no other sources of supply for heroin other than [Appellant]. Tuff was familiar with where [Appellant] was living at the time and identified the location as King Street and Edgar Street in York. Tuff also testified that if Gaskins were not a part of the transaction, he and Ditzler still would have met with [Appellant] to purchase heroin.

The Commonwealth then presented testimony of Shane Ditzler. Ditzler had numerous pending charges involving dealing narcotics, specifically fentanyl, including also being charged with drug delivery resulting in death for the death of the victim in this case, [Gaskins]. Ditzler testified that he had no agreement with the Commonwealth as to his pending charges in exchange for his testimony, and had not been offered immunity by the Commonwealth for his testimony. Ditzler stated that while he had no agreement with the Commonwealth for his testimony, he hoped for consideration for the sentences he faced for his charges and was partially motivated by this to testify.

- 3 -

Ditzler testified that other than ingesting, he had no way of knowing what the substance was that he purchased for his own use and sale to others. Ditzler was spending between $50 and $200 daily on drugs in December of 2016. Ditzler would sell drugs to support his habit, and he would just sell enough in order to maintain his habit. Ditzler testified that on December 23, 2016, Tuff brought Gaskins to where Ditzler was staying at the time, sold Gaskins heroin and Gaskins injected it. Ditzler planned on buying drugs from [Appellant] that day and before Gaskins arrived Ditzler had a buy set up with [Appellant]. Ditzler testified that he and Tuff were out of heroin and Gaskins wanted more, so a deal to also purchase heroin from [Appellant] was set up.

Ditzler testified that all three walked toward Turkey Hill to meet with [Appellant]. Tuff and Ditzler walked to [Appellant's] car and Tuff received a phone call from [Appellant] that he was ready to meet. Ditzler testified that it wasn't unusual to meet in [Appellant's] car, but they would also meet at [Appellant's] house located off Edgar Street. At [Appellant's] car Ditzler got in the front passenger's seat and Tuff sat in the backseat. Ditzler testified that eventually Gaskins walked up to the car as well. Ditzler testified that Tuff split up the heroin they bought from [Appellant]. Ditzler testified that Tuff then got out of the car and left the area with Gaskins. Ditzler left the area with [Appellant] in his car to go and get the drug known as "Molly."

The Commonwealth also called Detective Patrick Gartrell, Northern York County Regional Police and York County Drug Task Force, to testify[.] Detective Gartrell assisted in the investigation concerning the present matter. Specifically, Gartrell obtained the security surveillance video from the Turkey Hill as part of the investigation. Based on his interactions with Tuff, Ditzler, and Gaskins[,] Detective Gartrell was able to identify them in the surveillance video as it was played in open court with the jury present. Gartrell testified that Tuff, Ditzler, and Gaskins were in the area of the Turkey Hill. Tuff and Ditzler began walking west toward Mason Avenue, and eventually Gaskins followed them. Approximately 4 minutes later in the video[,] Gaskins and Tuff returned to the Turkey Hill before separating.

The Commonwealth next called Detective Michael Hine, Northern York County Regional Police, to testify. Detective Hine testified that Shane Ditzler was interviewed three (3) times concerning the investigation in this case. Hine testified that across

the interviews with Ditzler the scene, number and identities of the peo[p]le present remained consistent. Specifically, Ditzler was consistent in the fact that [Appellant] was at the location where the drug deal took place. Detective Hine testified that he was able to determine [Appellant's] address to be 11 Edgar Street in York, the same address pointed out by Tuff and Ditzler.

After the Commonwealth closed its case in chief, [Appellant] elected not to testify, and put on no evidence. After both parties closed and the instructions were given, the jury retired to deliberate, and in turn returned a verdict of guilty on the charge of criminal conspiracy to deliver heroin with fentanyl. The Court sentenced [Appellant] to 84 to 168 months for the crime of criminal conspiracy to deliver heroin with fentanyl.

[Appellant] timely filed a notice of appeal,[4] and then submitted a statement as directed.

Trial Court Opinion, 5/30/19, at 2-7 (internal citations omitted).

Appellant presents the following issues for our review:

Did the jury err in finding sufficient evidence to support a conviction as there was no evidence presented to support a conspiracy to deliver[] heroin with fentanyl?

Was the verdict of the jury against the weight of the evidence and did the [l]ower [c]ourt err in not finding so after the issue was raised in a Post Sentence Motion?

Did the [l]ower [c]ourt abuse its discretion in sentencing Appellant to seven to fourteen years in prison for being found guilty of a crime which had a standard range of sentence of 21 to 27 months and a maximum sentence of fifteen years?

Appellant's Brief at 6.[5]

_____

[4] A post-sentence motion was also filed; it was denied on February 27, 2019.

[5] We need not reach an issue regarding sentencing if we were to find in Appellant's favor on one of his other claims. Thus, we have renumbered Appellant's issues and will address his claims of insufficient evidence and

In his first issue, Appellant argues that there was insufficient evidence to establish that there was an agreement to deliver heroin with fentanyl. Appellant's Brief at 20. Appellant asserts that the Commonwealth's argument during trial was that the agreement was to deliver only heroin. *Id.* Appellant states that there was no evidence that there was an agreement to deliver heroin with fentanyl. *Id.* Appellant further maintains that "[t]he Commonwealth had every right to charge Appellant with [intent to deliver heroin] but chose not to." *Id.* at 21. As a result, Appellant contends: "To ignore the clear meaning of the charge and the verdict slip is improper. The jury erred in finding the Appellant guilty of the charge of Conspiracy [to deliver heroin and fentanyl] and the [l]ower [c]ourt erred in not correcting this mistake." *Id.*

> The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder's]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record

weight of the evidence claims first. ***Commonwealth v. Shamberger***, 788 A.2d 408, 412 (Pa. Super. 2001).

must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Pursuant to the Crimes Code, conspiracy is defined as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.--** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

A conspiracy is almost always proved through circumstantial evidence. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002)

(internal citations and quotation marks omitted).

To sustain a conviction of criminal conspiracy:

The Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may

create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Additionally[,] an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

***Commonwealth v. Bricker***, 882 A.2d 1008, 1017 (Pa. Super. 2005)

(internal citation omitted).

Furthermore, PWID is defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

18 P.S. § 780-113(a)(30).

In addressing this issue, the trial court provided the following analysis:

Under 18 Pa.C.S.A. § 903(a)(1), criminal conspiracy, the Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient. ***Commonwealth v. Nypaver***, 69 A.3d 708 (Pa.Super. 2013). There are four factors to be utilized in deciding if a conspiracy existed: 1) an association between alleged conspirators; 2) knowledge of the commission of the crime; 3) presence at the scene of the crime; and 4) in some situations, participation in the

object of the conspiracy. ***Commonwealth v. Feliciano***, 67 A.3d 19, 25 (Pa.Super.2013). Here, [Appellant] had an association with his co-defendants, in that they both testified to knowing [Appellant] for years and bought drugs from him before. In fact, [Tuff] testified that [Appellant] was his only supplier at the time. As they were all in the vehicle when the deal occurred, then the third factor is satisfied as they were at the scene of the crime. As for the final two factors, all participants had knowledge of and participation in the crime, as [Appellant] was the point of contact for Tuff and Ditzler to obtain drugs for their own use and sale, and both testified to contacting [Appellant] on the date of incident in order to arrange for a sale.

While [Appellant] asserts that the testimony of the co-conspirators only concerned a sale of heroin and there was no express mention of an agreement to purchase heroin with fentanyl, this argument is not persuasive. [Tuff] and [Ditzler] testified that the only way they could tell exactly what the substance was that they purchased was by ingestion. A jury could reasonabl[y] infer from this testimony that [Appellant] conspired to deliver heroin regardless of what it was mixed or cut with, including fentanyl. Additionally, the conspiracy found only needs to be an agreement to commit an unlawful act, which in this instance was possession with the intent to deliver a controlled substance. Whether that substance is heroin or heroin with fentanyl is of no moment. By these facts, a jury could reasonably find [Appellant] guilty of criminal conspiracy to deliver[] of heroin with fentanyl beyond a reasonable doubt.

Trial Court Opinion, 5/30/19, at 9-10 (footnote omitted).

The statute defining the offense of possession with intent to deliver proscribes delivery of a controlled substance. 18 P.S. 780-113(a)(3). The provision itself does not designate the controlled substance. In other words, the specific identity of the controlled substance is not an element of the offense. The identity is only relevant for gradation and penalties based on the relevant schedule. 18 P.S. § 780-104. Specifically, heroin is a Schedule I substance, 18 P.S. § 780-104 (1)(ii)(10); Fentanyl is a schedule II substance,

18 P.S. § 780-104(2)(ii)(6). Section 780-113(f)(1) provides the following with regard to a violation of Section (a)(30) resulting from PWID of schedule I or II controlled substances:

> (f) Any person who violates clause (12), (14) or (30) of subsection (a) with respect to:
>
>> (1) A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity.

35 P.S. § 780-113(f)(1) (internal footnote omitted).

The evidence of record, viewed in the light most favorable to the Commonwealth, supports that conclusion that Appellant was in possession of a controlled substance with intent to deliver it. Furthermore, as the trial court explained, the elements of criminal conspiracy are also met. Accordingly, the trial court did not err in concluding that there was sufficient evidence of record to establish that Appellant had conspired to provide a controlled substance to the victim.

The fact that the substance was heroin with fentanyl, not solely heroin, is of no significance for purposes of establishing the elements of the statute. Heroin and fentanyl are both controlled substances. Moreover, this Court has explained:

> A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a

- 10 -

controlled substance is guilty of [possession of a controlled substance]. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. The defendant need not know the chemical name or the precise chemical nature of the substance.

*Commonwealth v. Sweeting*, 528 A.2d 978, 980 (Pa. Super. 1987). Thus, the evidence supports the conclusion that the parties conspired to possess with intent to deliver a controlled substance. Appellant is entitled to no relief on this claim.

Appellant next contends that his convictions for possession with intent to deliver and conspiracy were against the weight of the evidence. Appellant's Brief at 22. In support of his claim, Appellant argues that there was no evidence presented that there was a conspiracy to deliver heroin with fentanyl. *Id.* Appellant maintains that as a result, a verdict was entered "that was not supported by any evidence and the [l]ower [c]ourt did not correct the error. The decision of the [l]ower [c]ourt serves to shock one's sense of justice." *Id.* at 23.

"A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the

- 11 -

> opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1055 (internal citations and emphasis omitted).

As discussed in our analysis of Appellant's sufficiency-of-the-evidence claim, evidence regarding the specific controlled substance delivered was unnecessary for a conviction of the charged crime. As explained, both heroin and fentanyl are controlled substances, possession and delivery of which are proscribed by 18 Pa.C.S. § 780-113(a)(30). Moreover, we concluded that there was sufficient evidence of record to convict Appellant of conspiracy to deliver a controlled substance. As a result, Appellant's contention that the Commonwealth's lack of evidence regarding an intent to deliver heroin with fentanyl is of no moment, and does not result in the trial court's conclusion being against the weight of the evidence. Because we discern no abuse of discretion, Appellant is entitled to no relief on this claim.

In his final issue, Appellant argues that the trial court abused its discretion by sentencing him to seven to fourteen years of incarceration. Appellant's Brief at 17. Appellant asserts that the conspiracy conviction had an offense gravity score of six, with the standard range of sentencing being twenty-one to twenty-seven months. *Id.* Appellant states that he was

sentenced to seven to fourteen years of incarceration. *Id.* However, Appellant also acknowledges "that the maximum that Appellant could have received on the [c]onspiracy charge was 15 years and the [c]ourt's sentence did not exceed this." *Id.* at 17-18. Furthermore, Appellant argues that the trial court erred because:

> In the present case, it appears that the [c]ourt sentenced Appellant by considering the totality of the charges as opposed to what Appellant was found guilty of. In addition, by stressing Appellant's prior drug offenses the [c]ourt appeared to consider the prior offenses not only in calculating a prior record but also in going outside the aggravated range.

*Id.* at 18.

We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see

- 13 -

> Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)).

Here, the first three requirements of the four-part test are met: Appellant filed a timely appeal; Appellant preserved the issue of imposition of an excessive sentence in his post-sentence motion; and Appellant included a statement raising this issue in his brief pursuant to Rule 2119(f). *Moury*, 992 A.2d at 170. Therefore, we address whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the sentencing court.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Ahmad*, 961 A.2d 884, 886-887 (Pa. Super. 2008). Allowance of appeal will be permitted only when the appellate court determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. *Id*.

In his Pa.R.A.P. 2119(f) statement, Appellant asserts that the trial court imposed a sentence of eighty-four to 168 months, which was beyond the aggravated guidelines range. Appellant's Brief at 14. Appellant further maintains that the trial court erred for the following reasons:

> The reasoning given by the [c]ourt was that Appellant had four prior possession with intent to deliver charges. When Appellant argued that this was taken into account with his prior record score, the [c]ourt stated in its 1925 Opinion that "the fact that this matter involved deadly drugs of opioids was also considered." It is well established that a [c]ourt cannot punish a defendant for taking a case to trial. In this case, Appellant went to trial and was found not guilty of three of the four charges. It is argued that by imposing the sentence that the [c]ourt did, Appellant was punished for charges in which he exercised his right to a trial and was found not guilty.

Appellant's Brief at 14-15.

Appellant's claim raises a substantial question for our review. *See* ***Commonwealth v. Rodda***, 723 A.2d 212, 214 (Pa. Super. 1999) ("Where the appellant asserts that the trial court failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines, we will conclude that the appellant has stated a substantial question for our review."). Because Appellant has presented a substantial question, we proceed with our analysis.

Where, as here, a court imposes a sentence outside of the Sentencing Guidelines, the court must provide, in open court, a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S. § 9721(b).

> [A sentencing] judge ... [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which

takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

Moreover, in ***Commonwealth v. Griffin***, 804 A.2d 1 (Pa. Super. 2002), a panel of this Court also stated:

[W]hen deviating from the sentencing guidelines, a trial judge must indicate that he understands the suggested ranges. ***Commonwealth v. Rodda***, 1999 PA Super 2, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*). However, there is no requirement that a sentencing court must evoke "magic words" in a verbatim recitation of the guidelines ranges to satisfy this requirement. ***Id.*** at 215. Our law is clear that, when imposing a sentence, the trial court has rendered a proper "contemporaneous statement" under the mandate of the Sentencing Code "so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them." ***Id.*** at 216.

***Griffin***, 804 A.2d at 8.

At the sentencing hearing, the trial court stated the following in imposing Appellant's sentence:

Presentence investigation report was ordered to be completed prior to the sentencing. It is noted the [c]ourt reviewed and considered its contents. [Appellant's] prior record score is a five. The charges before this [c]ourt for sentencing have the following offense gravity score: CC delivery of heroin is a six.

* * *

Let me address a couple of matters before I impose the sentence. The defense is right in part and not so right in part on one thing

- 16 -

which is that the prior deliveries are already incorporated into the prior record score. We don't, you know, double that up in terms of sentencing or aggravation. Defense is absolutely correct on that.

However, what is not incorporated into the prior record score is rehabilitative potential and remorse. Those are separate considerations by the [c]ourt in terms of sentencing. Rehabilitative potential and remorse do not set the prior record score. That is a mathematical calculation based on prior record.

When a Defendant, any Defendant, commits the same crime again and again, the same crime, the [c]ourt may properly weigh that on the issue of remorse and rehabilitative potential the likelihood that the Defendant will re-offend again. The [c]ourt may properly consider that in regard to whether or not the Defendant is a danger to the community.

And the [c]ourt is going to do so in this case. The fact that [Appellant] has committed this same crime of felony drug offenses and that this is his fifth PWID, the [c]ourt does consider to be an aggravating factor in this case.

And when the fifth PWID involves the deadly drugs of heroin and fentanyl, the [c]ourt may essentially consider that on his fifth offense to be an aggravating factor due to the lack of rehabilitative potential and the lack of remorse. And we will do so in this case.

The [c]ourt will not consider in any way and it would be highly improper for the [c]ourt to consider the fact that [Appellant] has pending charges. That is absolutely out of bounds. I don't care. [Appellant] is absolutely presumed to be innocent of those pending charges. And it would be a tremendous miscarriage of justice for merely pending charges to weigh into this matter whatsoever and it will not. That shouldn't have even been in the PSI report. The [c]ourt will completely disregard that.

All right. What else? I need to make clear what we are doing here and what we're not doing here. The jury did not find [Appellant] guilty of drug delivery resulting in death. This [c]ourt's sentence in no way is holding [Appellant] responsible for [Gaskin's] death. They found him guilty of criminal conspiracy of the delivery of heroin with fentanyl. We can't look behind that verdict.

- 17 -

\* \* \*

[Appellant] has an extensive criminal background as an adult going back to 2000 beginning with carrying a firearm without a license. It is noted he has five PWIDs, the firearms offense. He's got terroristic threats from 2012 amongst a series of misdemeanors for drug crimes, false swearing, and harassment. He's a career criminal. He has shown no rehabilitative potential or remorse concerning the matter before this [c]ourt. He is entitled to maintain his innocence on appeal. That's a right that he has and the [c]ourt will not hold that against him.

But the [c]ourt will note that he sought to impeach the verdict in his PSI. With [Appellant's] record of drug dealing, he has demonstrated a lack of remorse and rehabilitation. His disregard for public safety which is reflected not only in his drug dealing but in his prior gun offenses and his threat offenses, the [c]ourt finds that [Appellant] is an extreme risk to public safety. He needs to be separated from society for an extensive period of time to promote public safety.

He will be sentenced **in the aggravated range** to punish, to deter him, to deter others from engaging in a lifetime of criminal conduct, and to protect society from [Appellant] continuing to deal deadly drugs.

Due to lack of remorse and lack of rehabilitative potential, this [c]ourt is convinced that as soon as he is released from prison, he will continue his criminal ways and he will continue to deal deadly drugs to the public.

Taking all of these factors into consideration, as well as the testimony of the witnesses . . . [t]hat [Appellant] was clearly engaging in a life of dealing drugs and profiting from that drug trade. This was not an isolated incident.

The [c]ourt sentences [Appellant] in 5344 of 2017, Count 3, to a period of 7 to 14 years in a State Correctional Institution. A $35,000 fine is imposed to ensure that he does not gain benefit of his illicit drug proceeds. The court costs are assessed. He is not RRRI eligible. He'll have 475 days credit.

N.T., Sentencing, 12/19/18, at 6-12 (emphasis added).

- 18 -

As indicated, Appellant was sentenced beyond the aggravated Sentencing Guidelines range.[6] There is no indication of record that the sentencing judge was aware of the applicable guideline ranges, and the extent of his deviation from the guidelines in sentencing Appellant. In fact, the trial court stated that it was sentencing Appellant "in the aggravated range." N.T., Sentencing, 12/19/18, at 12. We note that the trial court stated in its Pa.R.A.P. 1925(a) opinion that "[t]he [c]ourt expressly stated on the record its reasons for sentencing [Appellant] outside of the guideline ranges for his conviction." Trial Court Opinion, 5/30/19, at 8. A review of the sentencing transcript, however, does not reflect that the trial court understood that it was sentencing Appellant outside of the guideline ranges at the time of sentencing.[7]

_____

[6] For a conviction having a prior record score of five and an offense gravity score of six, the standard minimum range is twenty-one to twenty-seven months, and the aggravated range is twenty-seven to thirty-three months. 204 Pa.Code § 303.16(a). Appellant's minimum sentence of eighty-four months is beyond the aggravated range. We further note that Appellant's sentence was not illegal because it did not exceed the statutory maximum of fifteen years. 18 Pa.C.S. § 905; 18 P.S. § 780-113(f)(1) (conviction of conspiracy PWID for schedule I and II controlled substances carries a maximum statutory sentence of fifteen years).

[7] In **Commonwealth v. Flowers**, 149 A.3d 867 (Pa. Super. 2016), the trial court failed to comply with the requirements of Section 9721(b) when it sentenced the appellant outside of the guideline ranges. The trial court placed its reasoning in its Pa.R.A.P. 1925(a) opinion, but this Court found that statement to be insufficient because it was not given "in open court at the time of sentencing," vacated the judgment of sentence, and remanded for resentencing. **Id.** at 876.

In **Commonwealth v. Byrd**, 657 A.2d 961 (Pa. Super. 1995), this Court dealt with a similar factual scenario.[8]  In **Byrd**, at sentencing the trial court stated that it was sentencing the appellant in the aggravated range, but in fact sentenced the appellant outside of the Sentencing Guidelines.  **Id.** at 963.  This Court reiterated that "[w]hile deviation from the guidelines is permitted, the Sentencing Code requires that the court place of record its reasons for such deviation."  **Id.**  In vacating the appellant's judgment of sentence and remanding for resentencing, this Court explained:

> Here, the sentencing transcript reveals that the sentencing court failed to set forth in [the a]ppellant's presence the permissible range of sentences under the guidelines.  Moreover, while the sentencing court did provide reasons for the sentence imposed, these reasons were advanced to support a sentence in the aggravated range.  Nowhere did the court indicate that it was in fact sentencing [the a]ppellant outside of the guidelines and provide a contemporaneous statement of its reason for such deviation.  Accordingly, we vacate the judgment of sentence and remand for resentencing.

**Id.** at 964.

Thus, in the case *sub judice*, similar to **Byrd**, while the trial court provided its reasons for the sentence at sentencing, these reasons were advanced to support a sentence in the aggravated range.  Nowhere did the court indicate that it was in fact sentencing Appellant outside of the guidelines,

---

[8] This Court in **Rodda** affirmed the **Byrd** holding even after "dispel[ling] the misconception . . . that a sentencing court must evoke 'magic words' in a verbatim recitation of the guidelines range to satisfy the mandate of the Sentencing Code."  **Rodda**, 723 A.2d at 215.

nor did it provide a contemporaneous statement of its reasons for such deviation. Accordingly, because the requirements of Section 9721(b) have not been met, we are required to vacate the judgment of sentence and remand for resentencing in compliance with the rules. This decision is not meant to be interpreted as commentary or analysis of the length of the sentence imposed. This decision notes only that the trial court must fulfill its duty to provide a contemporaneous statement of reasons from deviating from the guidelines at the time of imposition of sentence. Resentencing shall take place within ninety days of the return of the certified record to the trial court.

Judgment of sentence vacated. This matter is remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/04/2020