J-A19028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL STANLEY | : | |
| | : | |
| Appellant | : | No. 228 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 9, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002218-2018

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:            Filed: November 25, 2020

Paul Stanley appeals the judgment of sentence entered following his guilty plea to numerous offenses: Possession of Controlled Substance Contraband by Inmate Prohibited (Possession); Knowing and Intentional Possession of a Controlled Substance (K&I); and Possession with Intent to Deliver (PWID).[1] Stanley argues that the trial court imposed an excessive sentence without considering his efforts at rehabilitation. We affirm.

At Stanley's plea hearing, the Commonwealth gave the following statement of the facts:

> [O]n Friday, December 29th, 2017, the defendant, Paul Stanley, was at the Men's Community Correction Center serving a sentence for possession with intent to deliver.

---

[1] 18 Pa.C.S.A. § 5123(a.2), 35 P.S. §§ 780-113(a)(16) and (a)(30), respectively.

Corrections officers conducted a search of [Stanley's] cell and found 69 packets of synthetic marijuana, sometimes called K2, which is a Schedule I controlled substance.

Cash was located in various items of [Stanley's] clothing totaling more than $1000. In addition, a ledger and Bucks County Corrections kiosk receipts were recovered.

On January 8, 2018, [Stanley] was interviewed and told investigators that he was a heavy smoker of K2. [Stanley] claimed that he purchased the K2 from another inmate and it was for personal use. He further claimed that the recovered cash was from his wife who brought him $100 to $300 every two weeks during visits. [Stanley] stated that his wife, quote, overspends and shops online, end quote, and brought [Stanley] the money to safeguard while he was incarcerated so that they could save the money to buy a house. He claimed that the ledger and receipts were because he ran a, quote, store for the commissary, end quote, and loaned money out to inmates to make purchases.

[Stanley's] wife was interviewed and repeated [Stanley's] explanation nearly word for word. She echoed [Stanley's] statement that he is a heavy user of K2, but admitted she had never seen him use it.

On January 9th of 2018, Investigator DiSandro intercepted outgoing mail from [Stanley] to his wife. In that letter [Stanley] instructed his wife what to say to investigators including, quote, you bring money on visits, usually $200 to $300, [totaling] about $1000. We're saving so we can move. You like to spend money, sometimes a little too much money. You know a little bit about me smoking K2. Don't worry, I don't smoke it. Those are the things you need to know. You don't know anything else about anything. The DTs will probabl[y] call you. Don't panic. Just say those things and nothing else, and just bang on them if you have to, end quote.

A recorded phone call was intercepted where [Stanley] instructed his wife as to how to retrieve cash that had been seized by investigators. He told her, quote, once you verified that you have been giving it to me they can't hold it, end quote. He also stated that since the money was, quote, split from the K2, ain't no case for delivery, end quote.

> The synthetic marijuana tested positive for 5-Fluoro ADB, a
> Schedule I synthetic cannabinoid.
>
> [Stanley] was reinterviewed on January 28th of 2018. He
> admitted he does not use K2 and that he had instructed his
> wife on what to tell investigators. . . .
>
> Detective Joshua Mallory would opine that the 5-fluoro ADB
> was possessed with the intent to deliver. . . .

N.T., Guilty Plea Hearing, 8/9/18, at 8-11. The Commonwealth noted that Stanley had prior PWID convictions in 2013, 2016, and 2017. *Id.* at 11. It added, "He was serving the sentence for the third of those convictions at the time that this [crime] occurred." *Id.*

Prior to sentencing, the trial court informed Stanley that the Sentencing Guidelines for PWID provided "18 months in the mitigated range, 24-30 in the standard, and 36 in the aggravated" range. *Id.* at 12. The same ranges applied for the contraband conviction. *Id.* The court also informed Stanley that the maximum sentence for PWID was 30 years since his case involved a second or subsequent offense. *Id.* at 13. Stanley's counsel then conducted an oral colloquy with Stanley during which Stanley said that he understood he was pleading guilty. Stanley also testified that he had been a home health aide before being incarcerated; had a drug problem; had completed two classes while incarcerated (Decisions for Living and Anger Management); was enrolled in a class called Criminal and Additive Thinking; and was employed at the correctional facility. *Id.* at 16-19. Then he said, "I made a lot of mistakes in my life and I regret them all." *Id.* at 20.

Before imposing sentence, the court gave its reasons for the sentence:

I know that you are remorseful. . . . [Stanley] has admitted that what he did was wrong and he has accepted responsibility, and he appears to have good family support as evidenced by his mother, his wife, and his younger brother who are all here to support him. And, of course, we know he has taken some classes in the correctional facility, and I have the letter that was submitted from Theresa Jackson.

***

I think we need to address some of the other factors that I'm obligated to consider as well: The sentencing guidelines, which we talked about; but also the need to protect the community; and your need for rehabilitation.

The distribution of drugs into our community is, I'm sure you can imagine, harmful to everybody who buys them. They're harmful to you. You use them. They're harmful to everybody. And when you keep reintroducing controlled substances into the community, then that tells me a couple things. First of all, in most cases we look to see whether the person does it for money or whether it's to just continue with their drug habit and to feed their habit, so to speak.

Your case is strictly for money because you're in a jail and you may have a problem and you're using it in the jail, but you're primarily doing this for money. Why else would you do it again and again and again after getting caught and sent to jail? Because the risk is worth it to you. You figure I'll get caught and get probation and do a few months in jail and then I'll go about my business. We can't have that.

And then when you're in the jail – when you can't conform to the rules of society we put people in jail. And then you can't conform to the rules of the jail. And I don't think I have any choice in order to protect the community, in order to deter you and others from committing this type of offense, and of course, in order to meet your rehabilitative needs, I don't think I have any choice other than to send you to the State Correctional Institution where they can address your drug problem in a more comprehensive manner than we can in the county.

So for those reasons, I believe a sentence of total incarceration is appropriate. To impose a sentence that

allows him to serve it in the county would depreciate the seriousness of what he has done. It's his fourth felony drug offense. All of those offenses were committed – not all of them, the first one wasn't, as far as I know, but the others were committed while he was on supervision. And of course, the last one is committed while he's actually serving the sentence.

Now, [the Commonwealth] has argued you've had one break after another. I don't know if that's true or not. I don't know what the reasons for the sentences were. I'm sure somebody is going to suggest that maybe I gave you a break on this case. We never know.

But what I do know is that you need to stop selling drugs, because if you come back again, it may not be me and some other judge is going to put you in jail probably for the maximum time. And you're not going to like what I'm about to do today, but just keep that in mind, it's going to be a lot worse the next time.

*Id.* at 20-28.

The trial court imposed a sentence of six to 15 years' incarceration for PWID and a concurrent term of 10 years' probation for Possession, with no further penalty on the remaining count of K&I. Stanley filed a post-sentence motion asserting that his sentence was in the aggravated range and asking the court to reconsider the sentence. *See* Motion for Reconsideration of Sentence, filed 8/20/18. The trial court denied the motion. Stanley filed this appeal after the court granted his Post Conviction Relief Act petition seeking reinstatement of his appellate rights *nunc pro tunc*. *See* 42 Pa.C.S.A. §§ 9541-9546.

Stanley raises a single issue before this Court: "Did the sentence imposed by the lower court, in excess of the aggravated range of the

Sentencing Guidelines, adequately take into account [Stanley's] efforts at rehabilitation?" Stanley's Br. at 3.

Stanley's issue challenges the discretionary aspects of sentencing. **See Commonwealth v. Lee**, 876 A.2d 408, 411 (Pa.Super. 2005) (stating an excessive sentence claim challenges discretionary aspects of sentencing). We therefore must first determine whether Stanley has complied with four requirements before we may address the merits of his claim. We must determine whether (1) Stanley has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) he properly preserved his issue either at sentencing or in a post-sentence motion, **see** Pa.R.Crim.P. 720; (3) he included a statement of the reasons relied upon for allowance of appeal of discretionary aspects of his sentence, **see** Pa.R.A.P. 2119(f); and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code, **see** 42 Pa.C.S.A. § 9781(b). **Commonwealth v. Beatty**, 227 A.3d 1277, 1286–87 (Pa.Super. 2020).

Here, Stanley stumbles at the second step. He did not preserve his issue at sentencing or in a post-sentence motion. He has thus waived review of his appellate claim. **See Commonwealth v. Heaster**, 171 A.3d 268, 273 (Pa.Super. 2017) (concluding appellant waived review of claim challenging discretionary aspects of sentence by failing to raise claim in post-sentence motion or by objection at sentencing). We therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/25/20</u>