J-S10041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARTUMISE GORE | : | |
| | : | |
| Appellant | : | No. 1131 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 16, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0001594-2017

BEFORE:  PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.: **FILED JUNE 22, 2023**

Appellant, Artumise Gore, appeals from his judgment of sentence of 4-8 years' imprisonment for robbery and other offenses.  He contends that the court abused its discretion by sentencing him above the standard range of the Sentencing Guidelines.  Finding that the court acted within its discretion, we affirm.

The trial court, per the Honorable Genece Brinkley, summarized the evidence adduced during trial as follows:

Rochelle Goines . . . testified that she and [Appellant] went to elementary, junior high, and high school together.  She stated that they lost contact afterward and reconnected through Facebook in July of 2016.  The two started dating around that time and [Appellant] moved into Goines's home, at 66th and Guyer Streets in Philadelphia, by September 2016.

Goines testified that on Saturday, September 10, 2016, she noticed that her ATM card was missing.  She testified that she normally kept it in a wallet attached to her phone case and noticed that it was no longer in the wallet.  She testified that [Appellant]

is the only other person who lived with her at the time. Goines testified that she allowed [Appellant] to borrow her ATM card once before when she was sick in order to buy her soup. She provided him the PIN at that time. Goines maintained that she did not give [Appellant] permission to take or use her ATM card at this time.

Goines testified that on September 15, 2016, [Appellant] asked her to walk with him approximately one block to the takeout Chinese store around the corner from her house around 11:45 p.m. When they arrived at the store, [Appellant] withdrew Goines's ATM card from his wallet to pay for the food. Goines testified that is when she realized that he had her card. [Appellant] asked her to pay for the food. Goines refused and explained that she needed the money to pay for rent. She testified that he tried to pull the card out of her hand, so she snatched it from him and started running away. As she ran away from the store, he chased her and tackled her from behind, causing her to fall in the middle of the street. When [Appellant] tackled Goines, she fell forward with her hands in front of her, which caused cuts on her hands. While she was on the ground laying on her stomach, [Appellant] was on her back repeatedly punching her in the back, right side of the head. Goines testified that she began calling for help. Goines explained that she was able to roll over onto her back and pushed [Appellant] off of her with her knees and hands. At that point, she got up and started running. Goines testified that one of her shoes fell off when [Appellant] tackled her, so she kicked the other shoe off in order to run towards 67th Street. Goines then threw her ATM card in a grassy area next to the takeout store.

Goines testified that [Appellant] tackled her for a second time. [Appellant] then raised Goines to her feet by lifting her by her ponytail. [Appellant] kept asking where her ATM card was while Goines continued to yell for help. Goines testified that she explained that she had her hands up and told him she didn't know where it was and that she must have dropped the card. [Appellant] pulled down Goines's shirt to expose her breasts and rummaged through her bra. [Appellant] then searched the pockets of her pants and reached his hands inside her pants outside of her underwear. [Appellant] retrieved her ID and house keys from Goines's pockets but was unable to find the card. At that point, Goines noticed a police car driving down Dicks Avenue.

[Appellant] embraced Goines in an apparent hug and began kissing her neck. As the police car approached, Goines called for help and the police approached. Goines testified that she tried to explain the situation to a female police officer. She explained that [Appellant] had her house keys and ID and requested the officer retrieve them for her. The officer asked [Appellant] whether he had any of Goines's belongings and he said no. At that point, the officer asked Goines what she wanted to do. Goines requested that the officer transport her to the hospital to address the cuts on her hands, elbows, and feet and the scratch on the back of her neck caused by [Appellant]. Goines testified that she was treated at the hospital for abrasions that took approximately 2 to 4 weeks to heal completely.

After being released from the hospital, Goines went to Southwest Detectives in order to follow up on her report. Goines testified that photographs were taken of her injuries and confirmed the pictures the Commonwealth presented to her were the pictures taken by the detectives. She further testified that she had personal knowledge that her bank account was missing $698. She lives paycheck to paycheck and was waiting for a direct deposit in that amount. After the incident described with [Appellant], there was only $2 left in her bank account. Goines testified that no one other than [Appellant] knew her pin number for her bank account. Goines testified that her bank statement reflected someone made a balance inquiry, then made repeated withdraws in $100 increments that incurred additional fees and charges.

Goines testified that after this incident, she received text messages and messages through social media from [Appellant]. In the messages, [Appellant] professed his love for Goines and apologized for an incident that occurred September 15, 2016. On cross examination, Goines denied being drunk or high on crack the night of September 15, 2016. Defense counsel questioned Goines why [Appellant] would pull out her ATM card, hand it back to her, and ask her to withdraw money if he already had the means to withdraw money himself. Goines corrected aspects of defense counsel's question in order to repeat the story she described previously.

Trial Court Opinion, 9/10/18, at 2-4.

Following a bench trial, the Honorable Pamela Dembe found Appellant guilty of robbery, theft by unlawful taking, and simple assault. On September 14, 2017, Judge Dembe sentenced Appellant to 4-8 years' imprisonment for robbery, a concurrent term of imprisonment for theft, and a consecutive term of 5 years' probation for simple assault, graded as a first-degree misdemeanor. Appellant did not file a notice of appeal. In early 2018, Appellant filed a PCRA petition alleging that defense counsel was ineffective for failing to file a direct appeal. On May 10, 2019, the court ordered Appellant's direct appeal rights reinstated *nunc pro tunc*.

Appellant appealed to this Court, which held that Judge Dembe imposed an illegal sentence. We reasoned that Appellant's simple assault conviction was a second-degree misdemeanor instead of a first-degree misdemeanor, and his sentence of five years' probation exceeded the lawful maximum for second-degree misdemeanors. Accordingly, we remanded for resentencing on all counts of conviction.

On August 21, 2019, a resentencing hearing was held before Judge Brinkley due to Judge Dembe's retirement. Judge Brinkley resentenced Appellant to an aggregate term of 5-10 years' imprisonment. Appellant appealed to this Court, which remanded for resentencing on June 1, 2021, because it was unclear from the record whether Judge Brinkley was aware that she was sentencing Appellant outside the guidelines. *Commonwealth v. Gore*, 2021 WL 2287485 (Pa. Super. June 1, 2021).

- 4 -

On November 16, 2021, Judge Brinkley convened another sentencing hearing. The Commonwealth recommended an aggregate sentence of 5-10 years' imprisonment, while defense counsel recommended a standard guideline sentence. Judge Brinkley sentenced Appellant to an aggregate term 4-8 years of incarceration, the same sentence originally imposed by Judge Dembe, and explicitly stated on the record that it was imposing an above-guideline sentence. N.T., 11/16/21, at 9. Appellant filed timely post-sentence motions, which were denied, and a timely appeal, the appeal presently under review. Both Appellant and Judge Brinkley complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal, "Whether the trial court erred when it sentenced [Appellant] outside the Pennsylvania Sentencing Guidelines for the criminal offense of robbery (F2), which was unreasonable and manifestly excessive?" Appellant's Brief at 4.

This is a challenge to the discretionary aspects of Appellant's sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013). Before reaching the merits of a discretionary aspects issue, this Court must conduct a four-part test to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his or her issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

*Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa. Super. 2018). "To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006).

Here, Appellant timely filed a notice of appeal, preserved his issues in his post-sentence motion, and included a Rule 2119(f) statement in his brief. We further conclude that Appellant has raised substantial questions for our review. *Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011) ("[a] claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question"); *Commonwealth v. Curran*, 932 A.2d 103, 105 (Pa. Super. 2007) ("a claim that the sentencing court sentenced outside the sentencing guidelines presents such a substantial question"). Therefore, we will address Appellant's claims.

Our review is governed by the following principles:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008).

Additionally, our review of the discretionary aspects of a sentence is governed

by 42 Pa.C.S. § 9781(c) and (d):

> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> **(d) Review of record.**—In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(c)-(d).

> This Court has further explained:
>
> Where ... a court imposes a sentence outside of the Sentencing Guidelines, the court must provide, in open court, a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.[A.] § 9721(b).
>
> [A sentencing] judge ... [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the

guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

* * *

[W]hen deviating from the sentencing guidelines, a trial judge must indicate that [s]he understands the suggested ranges. However, there is no requirement that a sentencing court must evoke "magic words" in a verbatim recitation of the guidelines ranges to satisfy this requirement. Our law is clear that, when imposing a sentence, the trial court has rendered a proper contemporaneous statement under the mandate of the Sentencing Code so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.

**Commonwealth v. Beatty**, 227 A.3d 1277, 1287-88 (Pa. Super. 2020).

Further, when the sentencing court is informed by a presentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations and, where the court has been so informed, its discretion should not be disturbed. **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009).

Finally, the court may depart from the guidelines if it is necessary to fashion a sentence which considers the protection of the public and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. **Commonwealth v. Durazo**, 216 A.3d 316, 320 (Pa. Super. 2019).

In the present case, at sentencing on November 16, 2021, counsel for Appellant recommended a standard guidelines sentence carrying a minimum sentence of 24-30 months. Counsel argued that Appellant was progressing with rehabilitation in prison by completing a drug treatment program and a violence prevention program, participating in the "Batterer's" violence prevention program, and working towards his GED. The Commonwealth requested a sentence of 5-10 years, noting that (1) the victim was still terrified of Appellant, (2) Appellant blamed the victim for the incident in the presentence investigation, and (3) Appellant has a history of probation violations, including an instance where he was released on bail and immediately threatened the victim. Appellant spoke on his own behalf and accepted full responsibility for his actions. Judge Brinkley expressly stated that Appellant's sentence was 4-8 years' imprisonment for robbery, a sentence she expressly stated was "above and outside the guidelines." N.T., 11/16/21, at 32.

Judge Brinkley explained her reasons for departing from the guidelines as follows:

> On the charge of robbery the sentence is four to eight years. This sentence is above and outside the guidelines. The reasons for the sentence include the same information that I just read into the record concerning [Appellant's] recidivism while on federal probation and the long history of criminal activity despite being on federal probation, as well as the victim's impact statement indicating that she is still afraid of [Appellant] and the lasting impact that this crime has had on her over the years.

The court has also taken into consideration everything that [Appellant] has said, in particular what he said today, regarding his treatment programs and his willingness to apologize to the victim. I believe that this sentence of four to eight years is an appropriate sentence even though it is above and outside the guidelines for the reasons that I gave today and the reasons that I read into the record today.

N.T., 11/16/21, at 32-33. Judge Brinkley reviewed a presentence report, a victim impact statement, and a memo dated July 25, 2019 from the Pennsylvania Department of Corrections ("DOC"). Judge Brinkley observed that the DOC memo

stated that Defendant was still on federal probation and that he did poorly on community supervision and violated every term imposed. His violations include absconding supervision, not completing court orders, drug treatment, incurred new arrests while on probation. In all, he has eight violations, six revocations and one pending revocation here in Federal Court. The current matter he was in direct violation of his federal probation. It is important to note [that] the next [paragraph] . . . shows he has been . . . continuously supervised on probation, parole or incarcerated since 1992. In that time he had only a total of eleven and a half months free of some form of court supervision or not incarcerated. In short, he spent nearly all but eleven months in the past twenty-five years on court supervision or was incarcerated. Since then nothing has changed in his life despite the implementation of various county probations, state and federal programs. He continues to not be amenable to county or any supervision—each time he's released from custody he either absconds or does not rema[in] committed to his treatment program or his sobriety. It is not long after each release he comes to be incarcerated. He still believes he's in control of his addiction and that he does not need treatment. He said he blames the victim, his ex-girlfriend for falsely accusing him of this crime. And it goes on.

*Id.* at 27-28.

For multiple reasons, the sentence for Appellant's attack and robbery of the victim was a proper exercise of discretion. Judge Brinkley resentenced Appellant to the same aggregate sentence that Judge Dembe imposed at the original sentencing hearing. Her sentence was within the statutory maximum and less than the sentence recommended by the Commonwealth. She explicitly stated on the record that she was aware that her sentence was above the guidelines, thus rectifying her failure in the previous sentencing hearing to mention this detail. *Beatty*, 227 A.3d at 1287-88.

Furthermore, Appellant's sentence was reasonably related to the gravity of his offense. Appellant stole the victim's debit card and emptied her account. He fought with her over the debit card, chased her down the street, and tackled her from behind. He then repeatedly punched her in the head. When the victim was able to momentarily break free from Appellant's grasp, he chased after her again, grabbed hold of her, and resumed punching her. When the victim fell to the ground, Appellant pulled her up by her hair. He then pulled down the victim's shirt, rummaged through her bra, exposed her breasts and put his hand down her pants.

In addition, Appellant's crime had a significant impact on the victim. The victim informed the court that the attack made her distrustful of people and that she was still afraid that Appellant would come after her. Moreover, Appellant's bail had to be revoked before trial because he was improperly sending the victim messages on social media.

Judge Brinkley properly determined that Appellant had little chance of rehabilitation, given his extensive criminal record, including numerous arrests, convictions and violations of probation and parole, and his history of drug use.

Judge Brinkley further considered the evidence presented by the defense. She heard argument by defense counsel for a mitigated sentence, and she considered a report prepared by the Department of Corrections detailing the treatment programs Appellant had completed while incarcerated. The court also heard Appellant's allocution in which he accepted responsibility for his actions. Judge Brinkley, however, had the discretion to conclude that any mitigating factors, such as Appellant's background, display of remorse, and personal character, were outweighed by various aggravating factors. This Court cannot second-guess Judge Brinkley's consideration of the evidence. *See*, *e.g.*, *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (this Court "cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court").

Finally, Judge Brinkley had the benefit of Appellant's presentence investigation report, so she presumably was aware of all appropriate sentencing factors and considerations and took them into account. *Ventura*, 975 A.2d at 1135.

For these reasons, we conclude that Appellant's sentence was a proper exercise of discretion, and we affirm.

Judgment of sentence affirmed.

- 12 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *6/22/2023*