J-S20020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                                    :
              v.                     :
                                    :
                                    :
RUSSELL C. SMITH             :
                                    :
            Appellant            :    No. 179 MDA 2024

Appeal from the Judgment of Sentence Entered May 9, 2023
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000112-2022

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:       **FILED: SEPTEMBER 16, 2024**

Russell Smith appeals from the judgment of sentence of 2 to 4 years' incarceration imposed after a jury found him guilty of recklessly endangering another person ("REAP") and terroristic threats.[1] He challenges the discretionary aspects of his sentence. Upon review, we affirm.

The trial court set forth the facts as follows:

On June 19, 2022, [Smith] returned to his residence in Brush Creek Township in Fulton County, Pennsylvania in the late evening. At the time, tensions had been high in [Smith's] household between him and his wife—there had been lots of arguments and yelling and generally not getting along. [Smith] would frequently drink heavily in the basement. On the evening of June 19th, [Smith] and his wife had been arguing about a bench, a bucket and firearms reloading items. This argument carried over into the morning hours. [Smith] returned to his room, and witnesses could hear noises that sounded like [Smith] loading and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2705 and 2706(a)(1).

"racking" a firearm. [Smith's] mother-in-law called the Pennsylvania State Police.

Troopers Seth Sprague and Matthew Rader proceeded from the PSP Barracks in McConnellsburg to [Smith's] residence. It was early morning and the sun was just coming up as they arrived at the residence. There they were met by [Smith's] mother-in-law, Debbie Diehl; [his] wife Kathy Smith, who was carrying a large handgun for her "protection"; and [his] daughters Meghan and Felicity. Diehl and [Kathy] Smith advised the troopers that [Smith] was intoxicated and had been heard loading weapons in his room and yelling.

The Troopers had announced that they had arrived and identified themselves as Pennsylvania State Police and ordered [Smith to] come out of the residence. After getting [Smith's] family out of the house and behind the cruiser, the troopers set themselves in a small perimeter at the front of the house with their guns drawn. Troop[er] Sprague approached [Smith's] bedroom window, yelling for him to come out of the house. At this time, Trooper Sprague had identified himself as a state trooper several times and banged on [Smith's] window. He saw [Smith] laying on his bed. Troop[er] Sprague banged on the window and ordered [Smith] to come out of the residence. [Smith] responded with something in the nature of "Fuck you! I'm going to shoot you in the head!" or "I'm going to blow your fucking head off!". [Smith] then got off the bed, crossed the room to the closet and came out with a rifle held at his hip and pointed at Trooper Sprague and walked toward the window. Trooper Sprague shot at [Smith] with his firearm two or three times. [Smith] continued to point the rifle at Trooper Sprague, and Trooper Sprague shot at him two or three more times, apparently striking [Smith]. After [Smith] went down, the troopers called for backup and emergency medical services. After additional personnel arrived [T]roopers Sprague and Rader left the scene and returned to McConnellsburg Barracks.

At this point, Corporal Corey Ickes from the Pennsylvania State Police, Bedford Station, and Trooper Dylan Gelvin from McConnellsburg completed the investigation. [Smith] remained in his room, refusing to come out for several hours. He was eventually extracted from the residence by the Pennsylvania State Police Special Emergency Response Team and airlifted out for medical care. As part of the investigation, State Police troopers found the rifle [Smith] was holding and pointing at Trooper Sprague when he was shot. The rifle's magazine was inserted,

and a round had been racked into the chamber, and the safety was off.

Trial Court Opinion, 8/1/23, at 2-3. Smith was arrested and charged.

On March 17, 2023, a jury convicted Smith of REAP and terroristic threats; the jury acquitted him of aggravated assault. On May 9, 2023, the trial court sentenced Smith to 12 to 24 months' incarceration for each conviction, to run consecutively. Smith filed a post-sentence motion, which the court denied. No appeal was filed at that time.

Following an amended petition under the Post-Conviction Relief Act,[2] the court reinstated Smith's direct appeal rights. Smith filed this timely appeal. Smith and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Smith raises the following three issues:[3]

1. Whether the trial court abused its discretion in imposing a sentence that was excessive and unreasonable.

2. Whether the trial court abused its discretion in sentencing [] Smith to a term of incarceration which exceeded the aggravated range of the Pennsylvania Sentencing Guidelines with regard to his convictions . . . without considering mitigating circumstances.

3. Whether the trial court committed an error of law for failing to articulate sufficient aggravating factors to support its sentence which exceeded the aggravated range of the Pennsylvania Sentencing Guidelines.

---

[2] 42 Pa.C.S.A. §§ 9541-46.

[3] Although Smith raises three separate issues, each addressing an argument as to why the trial court erred, we will address them together.

*See* Smith's Brief at 4 (excess capitalization omitted).

Smith challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)). Smith has satisfied the first three requirements under *Colon*. Accordingly, we must determine whether Smith has raised a substantial question.

In his Rule 2119(f) statement, Smith claims that the trial court abused its discretion because it: 1) imposed an excessive and unreasonable sentence outside the standard, aggravated range exacerbated by consecutive

sentences;[4] 2) failed to consider certain mitigating factors; and 3) failed to state sufficient reasons on the record for imposing a sentence beyond the aggravated range. Smith's Brief at 8-9.

We have held that "a claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines presents a 'substantial question' for our review." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 1999). Additionally, we have held that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). Lastly, an allegation that the trial court imposed the sentence outside the guidelines without providing an adequate explanation on the record raises a substantial question for our review. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014). Therefore, we will consider the merits of Smith's challenge to the discretionary aspects of his sentence.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

_____

[4] Sentencing outside the guidelines implicates the discretionary aspects of sentence, not the legality of sentence, as Smith claims.

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Smith claims that the trial court abused its discretion by sentencing him to an aggregate sentence of 24 to 48 months' incarceration. Smith makes three arguments in support of this claim.

First, Smith argues that the court imposed a sentence outside the aggravated range of the sentencing guidelines which was excessive and unreasonable. He maintains that, even after applying the deadly weapon used enhancement, which increased his minimum sentence, the trial court imposed an additional period of incarceration, thereby extending his sentence to the maximum minimum for each conviction; this resulted in a sentence twice the standard range. According to Smith, the unreasonableness of his sentence was further exacerbated when the court imposed consecutive sentences.[5] Smith's Brief at 13-16.

Next, Smith argues that the trial court failed to consider various mitigating factors. In particular, he maintains that the court did not take into account his prior record score of zero and the remorse he expressed for his actions. *Id.* at 17.

Lastly, Smith argues that the trial court failed to provide sufficient reasons for imposing a sentence outside the aggravated range of the

_____

[5] On appeal, Smith does not challenge the application of the deadly weapon used enhancement but only emphasizes that his sentence was already significantly longer because of it.

- 6 -

sentencing guidelines. According to Smith, although the court generally discussed the various sentencing factors, it did not specify the aggravating factors it relied on to sentence him beyond the aggravated range of the sentencing guidelines. Rather, he claims that the court sought to nullify the aggravated assault acquittal. *Id.* at 18-19.

We disagree.

Our Supreme Court has stated that the "sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation and quotation marks omitted). As such, this Court's ability to review a sentence is constrained by 42 Pa.C.S.A. § 9781(c). We can vacate a sentence and remand for re-sentencing only if we find: 1) that the court intended to sentence within the guidelines but "applied the guidelines erroneously;" 2) a sentence was imposed within the guidelines "but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or 3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id*.

A sentencing court is permitted to deviate from the sentences recommended in the guidelines, as they are merely advisory, if necessary, to fashion a sentence that to account for the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense

as it relates to the impact on the life of the victim and the community if necessary, to fashion a sentence that takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. *See Walls*, *supra.*; *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). When a court does, it "must place on the record its reasons for the deviation." *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009); *see also* 42 Pa.C.S.[A.] § 9721(b). This Court has further explained:

> [A sentencing] judge ... [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.
>
> * * *
>
> [W]hen deviating from the sentencing guidelines, a trial judge must indicate that [s]he understands the suggested ranges. However, there is no requirement that a sentencing court must evoke "magic words" in a verbatim recitation of the guidelines ranges to satisfy this requirement. Our law is clear that, when imposing a sentence, the trial court has rendered a proper contemporaneous statement under the mandate of the Sentencing Code so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.

*Commonwealth v. Beatty*, 227 A.3d 1277, 1287-88 (Pa. Super. 2020) (internal citations and quotation marks omitted).

If the sentence is unreasonable, this court must vacate it. Our Supreme Court has stated that "'unreasonable' commonly connotes a decision that is 'irrational' or not guided by sound judgment," and that reversal of a sentence on grounds of unreasonableness should "occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review." *Walls*, 926 A.2d at 963. In determining whether the sentence is reasonable, an appellate court must consider the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d); *Walls*, 926 A.2d at 963.

Here, the trial court sentenced Smith outside the guidelines, and therefore, we may reverse his sentence but only if we find that it is unreasonable. Our review of the sentencing transcript reveals that, in sentencing Smith, the court considered the sentencing guidelines. N.T., 5/9/23, at 17; *see* Trial Court Opinion, 8/1/23, at 5. The standard range sentence for REAP and terroristic threats was RS – 1 month of incarceration; both offenses had a gravity score of 3 and Smith had a prior record score

of 0. The trial court determined that the deadly weapon used enhancement applied. *Id.* at 19. With this enhancement, the sentencing guidelines recommended a standard range minimum sentence of 6 to 7 months' incarceration for each offense; the aggravated range was plus 3. Therefore, an aggravated, minimum sentence for each offense under the guidelines was 9 to 10 months' incarceration.

The court also considered relevant mitigating factors. The trial court had a presentence investigation ("PSI") report, which it reviewed. *Id.* at 17. Where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009). The court also reviewed the Commonwealth and Smith's sentencing memoranda. *Id.*

Additionally, Smith's counsel highlighted for the trial court the reasons why it should impose a lesser sentence than what the Commonwealth requested. *Id.* at 12-15. The court heard from Smith himself who expressed his remorse and indicated he was a law-abiding citizen and always worked. Smith asked the court to allow him to continue to be a productive member of society. *Id.* at 16-17.

However, the trial court also heard from the state trooper who Smith threatened to "blow his [f------] head off" that morning while endeavoring to protect members of the community. The trooper testified about the significant

impact this incident had on his job, causing him to recall that moment when responding to other incidents, and his life. *Id.* at 6-8.

Before sentencing Smith, the trial court indicated that it considered all these factors. And, in doing so, it found that a lengthier sentence was warranted. It therefore sentenced Smith to an aggregate sentence of 24 to 48 months' incarceration. The court expressly recognized that Smith's sentence exceeded the aggravated range but felt that, given the circumstances of this case, it was appropriate and would stand. *Id.* at 20. The trial court explained:

> Naturally, I was the Judge that presided over the trial in this matter. I recall the trial. I recall the testimony at the trial. I recall the facts of the case.
>
> I reviewed the presentence investigation report prepared by Fulton County probation and parole. And I have reviewed the sentencing memoranda from [Smith] and also the Commonwealth.
>
> Taking all of that into consideration, the sentencing guidelines, the deadly weapon used enhancement matrix, the applicable law and, you know, consulting my own feelings about this case – ***every once in a while a case comes along where the standard range sentence just doesn't seem to do justice to what happened, what actually happened.*** I have a couple specific cases in mind and it seems that guns are at the bottom of it.
>
> If [Smith] wasn't drinking the night before this incident happened and he wasn't passed out and incoherent or just, you know, just waking up with the Troopers banging on his window for some reason, he is falling asleep and waking up to a Trooper banging on his window, then I can't imagine what could have caused him to just first thing reach for a gun and the next thing after that making threats and pointing guns at people.
>
> That's a serious problem if he wasn't intoxicated when that happened and if that's something he is doing in the cold light of

- 11 -

sobriety in the morning, I have got to wonder what that says about someone.

To me, it sounds like someone who's got violent, as Attorney Kendall indicated, paranoid feelings about things.

There's a problem with you going for your gun and pointing it at people as the first thing that you do.

***

That weapon that was, as noted by the Commonwealth, ready to go, loaded, chambered, safety off, pointed at Trooper Sprague.

Taking into consideration the arguments of counsel, I have discussed deadly weapon used guidelines. I have discussed – or I acknowledge, even though the aggravated assault resulted in acquittal, that we have a State Trooper who is a victim in this offense and I'm concerned, deeply concerned, about [] Smith's rehabilitative needs. Because if it's an anger and weapons issue that he has and not alcohol issues added into that then he is going to need a lot of work and supervision at the State level.

I absolutely think the sentence called for by the Commonwealth is appropriate and that is how I'm going to sentence.

I believe it's fair under the circumstances and I don't believe that it is going to be held to be in anyway excessive considering what has happened here.

*Id.* (emphasis added).

Based upon the foregoing, we cannot conclude that Smith's sentence was unreasonable. As the trial judge, the trial court was familiar with the case and Smith. The trial court was cognizant of the Sentencing Guidelines, which reflected his zero prior record score, and considered them. The court considered the relevant mitigating factors, including Smith's allocution. It also considered the aggravating factors, which are clearly reflected in the trial court's statement as to why it sentenced Smith as it did, *i.e.*, Smith's

propensity for violence, drinking and anger issues, threat to law enforcement and disrespect for its authority. Taking **all** this into consideration, the trial court thoughtfully and deliberately exercised its discretion to deviate from the Sentencing Guidelines. It imposed a sentence which, in its rational judgment, reflected the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant in this case. On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009). Thus, the trial court did not abuse its discretion. Smith's sentencing claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/16/2024

- 13 -